Good morning. May it please the Court, Assistant Attorney General Katherine Sadik, on behalf of the defendants, may I please reserve two minutes for rebuttal? Yes, you may. Thank you. Plaintiff's complaint pleaded seven counts, all of which were the subject of defendants' motion for judgment on the pleadings. Six of those counts have now been dismissed with prejudice, and this appeal now concerns the sole remaining claim, which alleges defendants violated the Eighth Amendment in connection with Cintron being held in disciplinary confinement. Plaintiff and his amici try to make this case a general referendum on solitary confinement, but that's not what it is. It's a lawsuit against seven particular corrections officials in their individual capacities for monetary damages. Counsel, isn't that an unfair characterization to say that they want to make this a general challenge to solitary confinement? It seems to me that the claim here is really much more specific than that. It's about the interaction between prolonged solitary confinement and a serious medical condition that, according to the allegations, was known to the government officials and unaddressed by them. This is not a challenge generally to solitary confinement. It's very much a challenge to that particular interaction. Isn't that a fair characterization to what this case is about? Respectfully, Your Honor, I disagree. First of all, Plaintiff's brief is littered with these generalized allegations against defendants, allegations that Cintron has a particular mental health condition, allegations defendants knew about it. But if you look at his actual complaint and what he pleaded, he did not plead those allegations. This is paragraph 74. Prior to and since the overdose, referring to the overdose involving fentanyl, which caused that severe medical crisis, Mr. Cintron repeatedly requested to be enrolled in the RIDOC medication-assisted treatment program for individuals with opiate addiction. That would appear to be a very specific reference to the serious medical condition, opiate addiction, that he has, and he's alleging that he repeatedly advised correction officials about that. Iqbal instructs that in a 1983 action, the allegations have to be particular to the defendants. And in that paragraph that Your Honor just read, notably, it says nothing about the defendants. It doesn't allege that he made this request to any of these seven corrections officers who he's suing for monetary damages, or that they were even aware of the request, or that he'd ever been diagnosed with this condition that he proclaims that he has, or that the defendants would have had reason to know that he had this condition. The allegations in this case against the actual defendants are very sparse. And I also think it's important to look at both prongs of the qualified immunity analysis here, because I think that this case can be resolved on the second prong alone, which is objective and what looks at the state of the case law and what a reasonable corrections official at that time, in those circumstances, would have objectively known. And I think what's important here is that this is not simply a case where there's a lack of case law on point. Although... Why are you suggesting that the only relevant source of authority to give fair warning to the government officials as to the constitutional limits of their conduct is case law? Is it your position, for example, that the report of the Rhode Island Commission, which was issued a couple of years before the events here, that that has no relevance to the fair warning the corrections officials might have about the interaction between solitary confinement and untreated medical conditions? Is that just irrelevant? Case law is what's relevant first and foremost. And I think that it would be something new to suggest that a study, which by no means was unanimous, that study, if you read it, reflects that some of the participants had a very different perspective. So it's by no means a unanimous account as plaintiff portrays it. And some of the other circuit courts that have recently examined qualified immunity in the solitary confinement Eighth Amendment context have declined to waive qualified immunity based on scholarly reports and studies. But what I think is most important here is that there's case law from this court on point that affirmatively held that solitary confinement does not violate the Eighth Amendment, even when it's lengthy and even if it has negative impacts. Look at the Jackson case. In Jackson, this court first of all recognized that there's really no Supreme Court precedent directly on point, but it surveyed the federal appellate precedent. And what it found in surveying that precedent is that there was a recognition that solitary confinement can cause mental, emotional, physical deterioration. But nonetheless, the circuit courts had determined that such confinement did not violate the Eighth Amendment. And in Jackson, this court followed suit. Isn't that a separate issue from whether you need to provide medical treatment? Okay, as I understand the allegations, he was suffering a prolonged mental breakdown accompanied by loss of 70 pounds of weight. The social worker who saw him is alleged to have gone to the deputy warden to explain the situation and seek some treatment, and it was denied. And so are you saying that at the time this happened, the law was unclear, that you could just let someone stay there and not treat the condition? Your Honor, I think it's extremely important to distinguish between the allegations that plaintiff made in his brief on appeal and what he actually alleged as to each defendant in the complaint. Well, I was just reading, is the Second Amendment complaint the operative document? Yes, Your Honor, and the plaintiff- And I was just reading from paragraphs 87 and 88 that the social worker went to Defendant Corey and spoke also with Warden Aceto about Mr. Conner's deteriorating mental health condition and both refused to do anything about it. That's the allegation, and we have to assume that that's true. I think, first of all, the operative complaint never alleged a failure to treat. He never sought injunctive relief as to treatment. Well, what about what I just read? He alleged that he was not released early from disciplinary confinement, and that was the focus of his Eighth Amendment claim, that he wanted to be released early from disciplinary confinement, and he wasn't. And at most what he's alleging is that these two defendants, Aceto and Corey, at most these two had some awareness that he was having some kind of mental health difficulties. But in Jackson, this court acknowledged that solitary confinement comes with mental health difficulties and still said it's constitutional. What was the solitary confinement term in Jackson? Because here we have, I think it's about 450 days. It's well over a year. In Jackson, it was essentially indefinite for the rest of that inmate's life. They have virtually no human contact. I think you're conflating whether you can put someone in solitary confinement for a prolonged period of time, whether that was clearly established that you couldn't, as opposed to whether you can do that and then when they suffer the predictable serious medical conditions, you can ignore that. And I'm surprised to hear you suggest that the officials in Rhode Island thought the law allowed them to ignore medical conditions. I thought what we were going to find out is that these allegations are just allegations and so they can go to the next phase of litigation, but there will be proof that they did try to treat him or he didn't have a serious condition. Plaintiff's complaint acknowledges he had a social worker and he acknowledges that he received medication. So there's no pleadings in the complaint that he didn't receive any treatment. No, but he's losing. One of my colleagues just mentioned he lost 70 pounds. Isn't that something that should be taken into account? He never alleges any of these defendants even knew that. Iqbal stresses that a defendant in a 1983 action is only liable for their own actions, not simply because they're a supervisor. Counsel, are we to understand that because qualified immunity is at issue here, and obviously that's a critical issue, that we are somehow supposed to read a complaint differently, sort of more generously to the defendants, that it has to have a specificity that it might not otherwise have to have? This is a motion for judgment on the pleadings. I've quoted to you that paragraph where he alleges that before the overdose and after it he requested specific treatment for his opioid addiction. Judge Kayala has read to you an allegation in the complaint that he advised the officials about his serious mental conditions. Why doesn't that more general allegation about his opiate addiction inform what he's referring to by the mental condition? Aren't we supposed to read these all together to get a sense of what is going on here and what the officials should understand about what he's complaining about? Part of reading it together is also reading that plaintiff by his own admission was in disciplinary confinement because he was found adjudicated guilty of very, very serious narcotics-related offenses and that he continued to violate prison rules upon being placed in disciplinary confinement. And so there's clearly a penological reason for him being in disciplinary confinement, What were these rules that he was violating when he's already in confinement? I get the sense from these allegations that he may have been abusing his prescribed medications, which is consistent with a serious addiction problem that he cannot control. I mean, this is the phenomenon. I know you're somewhat dismissive of the amici briefs, but this is the classic situation where solitary confinement exacerbates the very condition he's complaining about. He's getting in trouble because he's abusing medications, which is symptomatic of his ongoing addiction. Isn't that a fair reading of what's going on here? The record reflects that he had a social worker to work with, and remember, these are wardens. They're not the counselors. They're not the people that were charged with his medical care. They're wardens, and his allegation against them is, you should have let me out of my disciplinary sentence early, even though I'm still abusing these substances. And given that plaintiff, by his own admission, was still abusing substances, even in the most restrictive setting, it would have been irresponsible and a risk to plaintiff's own life to put him in a less restrictive setting. What is he abusing? Is he using illegal drugs that have been brought into the facility, or is he abusing medications that he had been prescribed to deal with some of his ongoing problems? When he was in the general population, he overdosed on fentanyl and nearly died. That's not what I'm talking about. What's going on in solitary confinement? What are the rules that he's violating in solitary confinement? He was in a more restrictive setting, and thankfully because of that all he could abuse was prescription medication rather than the fentanyl that nearly killed him when he wasn't in the restrictive setting. I'm sorry. He was continuing to use fentanyl when in solitary confinement? No, Your Honor. He alleged, and this wasn't even alleged in the complaint. I think it might have been that he was abusing substances, prescription medication. But the point is there was, if I may finish the answer? Yes, go ahead. The point is there was a legitimate reason for these officials to keep him in a more restrictive setting. That may well be. You may have great defenses. You've discussed some of them. The facts may be very different than what's alleged, but I'm not sure you're directly confronting the procedural posture in which you stand here today, which is a motion for judgment on the pleadings, and we're required to assume everything in the complaint is true, not to assume facts that aren't in the complaint that are disadvantageous to him, such as some of the ones you've touched on, and to draw all inferences in his favor and then after that ask, is it plausible that your clients knew? And so I'm not sure you're grappling with that very difficult procedural context in which you stand here today. If you look, Your Honor, at the other recent circuit decisions from the last couple of years cited on pages 20 to 26 of our reply brief, many of which were at the Rule 12 stage, the 3rd, 4th, 8th, 9th, and 10th circuits have all granted qualified immunity, many of them at the Rule 12 stage, because they recognized there was a lack of notice. And in many of those cases, the plaintiffs alleged they had been diagnosed with severe mental health conditions and experienced severe effects from being in solitary confinement, more than what Citron alleges. And the courts said, even the courts that found potential deliberate indifference, still granted qualified immunity under that second objective qualified immunity prong, because they said there's simply a lack of a clear case law that would have given these officials clear, unmistakable, certain notice that what they were doing violates clearly established law. So you're saying that at the time this happened, the officials in charge of this prison did not know that it was a violation of the law to ignore and untreat a serious medical condition such as what he's alleged here. Your Honor, I don't think it's a fair reading of the complaint to say that any of these seven officials named in this suit ignored or even were responsible for Citron's treatment. He admits he got medication. He admits he had a social worker. And he doesn't claim that he asked any of these particular defendants for any kind of medical services, and they declined. It's these seven defendants. Just one question. You filed a Rule 26J letter, and you note the case Perry v. Spencer. My impression is that that case is kind of different. What we have here, again, I won't repeat what my colleague has said, but it's, again, we have the 450 days. At least there's the allegations, and this seems to me like this. Mr. Sperry has been treated like I guess you all remember the Alexander Dumas novel Count of Monte Cristo. He's just been locked there like nobody cares what's happening. How do you use Perry to support the qualified immunity? It's certainly not the same because it's 14th Amendment v. 8th Amendment. But the court in Perry said something that I think word for word could apply to this case. It said, true, and I'm paraphrasing, true, Perry's confinement was quite lengthy. But even still, there is nothing in our circuit's precedence that would have put the corrections officials on notice that what they were doing was unlawful. Here, the corrections officials are accused of knowing that solitary confinement imposes harm and still imposing it. That's exactly what this court in Jackson and Honeywell and O'Brien knew and still said it was lawful. In O'Brien, the inmate was self-inflicting harm, the inmates were depressed, and the court said it doesn't violate the 8th Amendment. In Jackson, the inmate was depressed and suicidal, and this court said that doesn't violate the 8th Amendment. In Honeywell, the inmate had a bloody nose and headaches and complained about all kinds of conditions on top of being in indefinite solitary confinement, and this court said that doesn't violate the 8th Amendment. The Rhode Island District Court in Harris and Rodriguez looked at including Rodriguez's allegation that solitary was worsening his mental health, and they said that doesn't violate the 8th Amendment. Now, maybe we can say that those decisions were wrong. You've saved some time for rebuttal. Thank you. Thank you. Thank you. Counsel Brappley, please introduce yourself on the record. Good morning, Your Honors. May it please the Court. George Mills on behalf of Plaintiff Appellee Jerry Cintron. I want to confirm today that your understanding of the complaint is exactly correct. Mr. Cintron alleges that he physically and mentally decompensated alone in a cell no bigger than a parking space with constant illumination, continuous loud noise, and cold temperatures. As he struggled with untreated opioid addiction, he lost 70 pounds, he pulled out his hair, and he began to engage in self-harm due to his isolation. Counsel, where in the complaint does he specifically say that he was struggling with untreated opiate addiction? Where? I quoted paragraph 74. Is that what you're referring to? Excuse me, 73. Is that what you're referring to? Yes, Your Honor. I would also note it's a reasonable inference from the fact that he's in solitary confinement due to an overdose in the first place. So we think it's a reasonable inference from the fact that he overdosed that he's struggling with this illness. And that's exactly what the amici in their scientific expertise that they can explain far better than I can. So if you're ill the way he is, solitary confinement is not the solution? Yes, Your Honor. That's correct. Let me also ask you. You have seven named defendants. And again, you might just want to give us the paragraph numbers if you have them. But how do you individually go as to each of them? Because this is not vicarious liability. You have to specifically go one by one. Yeah, absolutely, Your Honor. So I'll start with Bebo. The allegations against Bebo are very strong. Bebo told my client, we'll see if you're still normal when you get out of segregation, kid. You're effing buried alive. I'm going to bury you alive. That's at paragraph 41 in the second amended complaint. None of that directs what your claim is here today. What I see is I understand your claim is here today is that he suffered from a serious medical condition. Then for each defendant, you need to show that that defendant knew that. And then you need to show that the law was clearly established at that time that not treating was unlawful. And you need to establish they didn't treat. So 73, for example, gets you saying he was asking for some medical assistance. But it doesn't say who he asked. You need to link all that up. Sure. And to the extent that I'm not able to do that, we did request leave to amend below. So we think the proper remedy would be to send it back to the district court for that. But I can link it up. To be clear, he is talking to he's in solitary confinement due to the fact that he's struggling with opioid use disorder. He's working with a social worker who speaks directly to Aceto and Corey about his mental health issues. As the amici brief point out, opioid use disorder is a mental health issue. So we think that's a fair inference from the fact that he's complaining about this. He's also in solitary confinement, as Judge Lopez, you were noticing earlier, continuously relapsing on opioids. So I think that supports an inference that they're punishing him repeatedly, time and time again, for his illness. And that's exactly what the amici point out. What do you say? As I understand the other side's argument, they're saying that, look, if you look at all the case law at the time, two things stand out. One is courts recognize to some extent the deleterious effects on a person's health, particularly mental health, of Prolonged. And secondly, that you could still put him in Prolonged for a long period of time. So if that was the law at the time, how do you say it's clearly established that they had to grant his request to suspend his solitary confinement? We would point you to a consensus of persuasive authority here. I think Palachowicz, in particular, is directly on point. It's a case from the Third Circuit. It's a 23-hour-a-day in solitary confinement case. We are a 23-hour-a-day in solitary confinement case. There was 13 months there. We have more than that here. In that case, they actually inferred liability to prison officials who were, quote, unquote, responsible for discipline. We have far more than that, right? We have Aceto and Corey corresponding directly with the social worker and refusing to take any action that would ameliorate the harms here. What about O'Brien and Jackson? Yeah, I'm glad the other side brought up Jackson in particular because it's a really thoughtful opinion from Judge Coffin. And he, I think, anticipates exactly where the law was going and where the law has gone. He was writing in 1983, and I would point the court to page 585. He says, the threat of substantial, serious, and possibly irreversible, if not critical, psychological illness, together with prolonged or indefinite segregated confinement, would increase the burden on prison authorities to explore feasible alternative custodial arrangements. That's 1983. So what do we have in the intervening years? We have every study of solitary confinement, as you noted in Perry v. Spencer, showing that serious adverse mental health effects start at 10 days in solitary confinement. So the law, I would posit, has recognized a change since Jackson. The science has recognized a change since Jackson. And we're just in that cycle that historically repeats, as some of the amicus brief points have. Counsel, I mean, I referred to the 2017 report of the Rhode Island Commission, which was designed to study the implications of solitary confinement. And the opposing counsel, understandably from her point of view, was somewhat dismissive of that, saying those are just, you know, those are recommendations. They're not necessarily an authoritative source. But, you know, there are district court opinions from 2018 that specifically quote that report and credit the importance of those reports in the decisions that they make with respect to Eighth Amendment claims. Is that, I guess you would probably agree with that question, but is that a fair assessment of the state of the law in Rhode Island in 2018, shortly before the decisions were made on solitary confinement for your client? It is, Your Honor. And I would note that some of the defendants here, I believe Aceto and Kettle were defendants in the DuPont case. I would add, Your Honor, that it's not just district courts doing this. The Supreme Court in Hope v. Pelzer looked to a DOJ report in determining whether they would be on notice that this was an egregious and obvious violation. And the DOJ report had said what the Alabama Department of Corrections were doing was, you know, absolutely egregious punishment. So they actually looked to sources beyond case law. And I would note this court has done it as well in a case called Irish v. Fowler. You noted the importance of looking to regulations, state law, and other sort of sources. Counsel, let me, along that context, you mentioned like the science has changed over the last decade or more, and obviously this is a judgment on the pleading. Wouldn't this be the case that if remanded should warrant at least that there be discovery against scientific expert evidence, depositions, and ultimately, you know, the court could decide against you based on the scientific evidence, but it could also say this should go to trial based on that evidence. Isn't this such the case? Yes, Your Honor. I think that's exactly right. And we think, as Judge Catt, as you pointed out to my friend on the other side, there are many arguments that they can make at summary judgment, but this is just too early. We're here on the pleadings. We haven't exchanged any meaningful discovery, and that was their choice to come here. There's a reference to 2,000 pages of discovery that preceded the motion for judgment on the pleading. What was all that about? It's his medical records, which we already had. I'm sorry? It was his medical records, the large portion of that, which, you know, was documents that we already had. So we haven't done depositions. We haven't inquired into, you know, what did the social worker say to a CTO? Okay, but we have to be a little careful about it. I mean, the whole purpose of qualified immunity is to preclude imposing on defendants the burden of that kind of discovery and that kind of litigation. So I think to suggest that we should allow the process to simply go forward to get more factual development is not really consistent with what qualified immunity is all about, right? That's correct, and I wouldn't suggest otherwise. I think, I want to be clear, we have a very strong complaint here. We have allegations against each defendant, and I'm happy to return, you know, to a defendant-by-defendant analysis if that would be helpful, but we don't think this is right for a motion for judgment on the pleadings. We think we have far more than a plausible inference connecting many of these defendants here to an inference that they're liable for the allegations in the complaint. Let me see if I can break this down some. Do you agree that at the time these defendants, the relevant times here, the law was not clearly established that prolonged solitary confinement was unconstitutional? I'm a little caught in the double negatives, but I think, no, I don't agree that it was not clearly established. You thought it was clear at the time they acted that prolonged solitary confinement was unconstitutional? Oh, sorry, not per se, and again, I want to be clear, this is not a per se challenge. So we're not making it per se. Step two, though, you say in sightlights of literature that that not unconstitutional action will invariably cause serious mental problems. So you seem to get in somewhat of a logical loop there. To put a finer point on it, as I read his requests, at least the ones we've read so far, he wasn't requesting of any particular person any treatment. He was requesting get me out of solitary. And yet we've established that keeping him in solitary for a year was at the time not unconstitutional or clearly established as such. Well, I would push back that it was not clearly established, pointing to a case, again, like Palachowicz, where for people with particular, and again, this is very specific to Mr. Cintron, it's not a per se challenge. For people with particular vulnerabilities, going into solitary confinement, solitary confinement will exacerbate and make more serious those harms. So to be sure it's harmful in any respect to anyone, I think that's common knowledge that being alone is harmful. But for Mr. Cintron's particular circumstances, that's how we exit that loop. I think this Court doesn't need to untangle that. So you're saying is what they denied him taking him out of solitary or some treatment while he was in solitary? I think it would depend on what the treatment that they offered him was. You know, if they were able to offer him something that could resolve these serious, serious mental harms he was alleging, the self-harm, losing 70 pounds, and I would note there are physical harms here as well, the self-harm incidences, then yes, maybe something short of being released from solitary could solve the problem. But again, in the motion for judgment on the pleadings, they're just categorically denying aid when a social worker is telling Mr. Defendants Aceto and Corey that he needs to be released from solitary. Let me ask you along those lines, and based on my experience as a district judge, would you be arguing perhaps that if the case were to go back, the district judge could have issued an order and say, we're just going to do discovery limited to qualified immunity prongs. Again, it's not going to be the overall discovery. If you survive that, then that's another possibility, correct? Absolutely, Your Honor. Counsel, if I might, I know we're over time, but I want to be candid with you. What troubles me about your complaint, and I'm looking now at, this is with respect to Lynn Corey, and this is your allegation. Upon information and belief, Mr. Sintron's social worker spoke separately with Warden Aceto and then Deputy Warden Lynn Corey about Mr. Sintron's deteriorating mental health condition. Both refused to suspend the remainder of his disciplinary time. You have allegations like this with respect to everyone who's in a supervisory position. The request is to suspend the length of his confinement. There is no reference in those allegations to a request to treat his opioid addiction through a program that the correctional facility had. They had a program in place to provide the medication necessary to treat this condition. You do not allege that that is the specific relief that he is requesting. All you're asking for is to suspend the length of the solitary confinement. So doesn't the government have a point that those allegations do not seem to give the officials involved specific notice of what he's asking for in terms of relief, other than let me out of here? Sure, Your Honor. So I think there's a few parts to that question. I think, one, we do view the case not just as a failure to treat case, but as the fact that keeping him in solitary itself was imposing a punishment that put him at substantial risk. So the solitary itself is a problem here, given his particular vulnerabilities. And that's what the court found in cases like Pawlikowicz, cases like Porter v. Clark in the Fourth Circuit. To the specific allegations question, which is how do we connect the dots between what he asked for and what he got, we think it's a reasonable inference from the fact that he overdosed on a pill. That's what gets him into solitary confinement. He is continually interrogated as this is ongoing, and he's withdrawing. I see my time is about to expire. May I finish answering? Yes, please finish. He is in solitary confinement due to his opioid use disorder. He's mentally deteriorating, tearing out his hair, beating his fists against the walls. He's losing 70 pounds as he withdraws from opioids. And he's working with a social worker and saying, this isn't working for me. What we know from the Clark amici brief is that opioid use disorder treatment is not often available to those in the most restrictive of confinement due to the solitary nature of it. So I would point your honor to the reason that his solitary is related to his opioid use disorder is what could they have done short of Medicaid-assisted treatment? They could have put him in a group therapy. Well, you can't do that because he's in solitary confinement. So the solitary confinement is the root of the denial of the medical care treatment here. And we think that it's a reasonable inference from the fact that he is kept alone in a cell no bigger than a parking space. As he mentally deteriorates, his social worker says, this man needs help for a mental disorder. The mental disorder he's struggling with is, among other things, opioid use disorder. And he's denied care on that point. So we think the court can absolutely connect those dots here. Thank you. Thank you. We ask the court to affirm. Attorney Sadick, you have a two-minute rebuttal. Please reintroduce yourself on the record. Thank you. Catherine Sadick for the defendants. No one's saying here that there's not room for improvement. This past summer, DOC rolled out a brand new policy that caps solitary confinement at 30 days and implements new measures. They did this with the support of the district court and experts and mediators in a different case. But what this case is about, what qualified immunity is about today, and particularly the second objective prong of the qualified immunity analysis, is whether these seven particular defendants did anything that violated clearly established law. The Third Circuit in the Johnson case from 2019 granted qualified immunity on a Rule 12 motion and said that additional discovery could not overcome the lack of binding precedential opinions clearly establishing that the Eighth Amendment right at issue at the time of his solitary confinement. If you look at the Hamner case from the Eighth Circuit, and again, these are all cited on pages 20 to 26 of our reply brief. The Hamner case, that was a motion to dismiss. The inmate had mental and physical health issues, borderline personality disorder, post-traumatic stress disorder, antisocial personality disorder. He said that solitary gave him irreparable emotional damage. The court granted qualified immunity on a Rule 12 motion. Let me understand your position. If we, applying the standard we have to apply to a motion for judgment on the pleadings, if we read these allegations, drawing fair inferences from them, to allege that Mr. Sintron, before he entered solitary confinement, and while in solitary confinement, continued to suffer from opioid addiction, that while in solitary confinement, that condition was exacerbated by the conditions that apply there, that he continued to abuse his prescription medications because of that condition, and he advised the authorities that he was continuing to suffer from that condition, there was evidence of it, weight loss, pulling out his hair, inflicting harm on himself, that even though advised of all of that, the authorities were entitled to disregard it, not respond, not try to give him available treatment? Are you saying that that could not be viewed as cruel and unusual punishment? Is that the proposition that you're asking us to adopt? No, Your Honor. I don't think that's the question before this court. Why not? Because plaintiff, many of those things Your Honor just cited, plaintiff did not allege that these defendants had any knowledge of it or any involvement with it. What we're not looking at overall was Sintron, did anyone at any time maybe do something that they could have done better? This lawsuit's about seven particular officials being sued for monetary damages, and it was Sintron's obligation, once qualified immunity was raised, to identify clearly established precedent that, as this court recently said in Jakutis, established for certain, that would have let these officials know for certain, that what they were doing violated clearly established law. And many of the considerations Your Honor just mentioned, the defendants are not charged with knowledge or involvement in those allegations. They're generalized allegations about I told someone or DOC didn't give me this. But these seven defendants are asserting qualified immunity, and their actions in this case, to the extent there are allegations particularly about these seven defendants, are not any different from the conduct that this court in Jackson, in Honeywell, and O'Brien said was lawful. It's unfair to charge defendants with liability when their conduct was wholly consistent with this court's precedent in those cases. And that doesn't mean there's not room for change and improvement in the future. But under the second qualified immunity prong, it's about notice. And circuit after circuit, as reflected on pages 20 to 26 of our reply brief, have looked at the state of the case law and said it did not clearly establish that solitary confinement, even when it's lengthy, even when it has negative effects on the inmate, it did not clearly establish that that was unlawful. And therefore, the defendants are entitled to qualified immunity.  Thank you.